ELLIS, Judge.
This is a suit by Sugarland State Bank to recover $65,000.00 and penalties allegedly due it under a Bankers Blanket Bond written by defendant Aetna Insurance Company. Plaintiff appeals from a summary judgment dismissing its suit.
On February 6, 1970, Sugarland accepted for collection an “International Cashiers Draft” dated February 2, 1970, made by the Bank of Sark, Ltd. to the order of Houston Aircraft Brokers, Inc., and endorsed by it in blank, in the face amount of $175,000.00. The Bank of Sark, Ltd. is located on the Island of Guernsey in the English Channel off the coast of France. The draft was presented for collection by Diamond Industries, Inc.
On the strength of the draft, and of a $75,000.00 note executed by Diamond, Sug-arland opened a checking account in the amount of $175,000.00 in Diamond’s name, with the understanding that a balance of at least $100,000.00 would be maintained until the draft was paid. The sum of $75,000.00 in the form of two cashier’s checks was immediately advanced to Diamond.
An inquiry to the Bank of Sark provoked a written assurance that “if check is sent in for collection as instructed, there should be no problems in collection.”
In the meanwhile, Sugarland obtained from Diamond its demand note for $175,000.00, dated February 6, 1970, which was held as additional collateral. The $75,000.00 note first obtained was either returned or destroyed. On March 17, 1970, the Bank of Sark advised Sugarland by telegram that payment had been stopped on the draft.
Sugarland attempted to recover its fundsr from Diamond, without avail. The indebtedness was then set up as a note account on the records of the bank, Diamond’s checking account closed out, and the balance therein applied on the note, leaving a balance of $65,000.00 due.
*337 In November, 1970, judgment was obtained in a Texas court against Diamond, but execution never issued and nothing was ever recovered thereunder.
In early 197.1, the State Bank Examiners required that the $65,000.00 debit be eliminated, and the directors of the bank assumed the obligation on a pro rata basis. At some time in 1971, prior to September, John J. Prokop, then Executive Vice President of the bank, was interviewed by agents of the Federal Bureau of Investigation relative to the transaction.
In August, 1972, Aetna was notified of the loss and a claim was made under the blanket bond. Liability was denied, and this suit was instituted on June 27, 1974. We note that some of the principals of Diamond were tried and convicted of some Federal crime arising out of this transaction in the latter part of 1973.
All of the foregoing facts appear in affidavits and depositions filed in the record in support of, or in opposition to, defendants’ motion for summary judgment.
The motion is based in part on the following provision of the blanket bond:
“Section 3. At the earliest praticable moment after discovery of any loss hereunder the Insured shall give the Underwriter written notice thereof and shall also within six months after such discovery furnish to the Underwriter affirmative proof of loss with full particulars. Legal proceedings for recovery of any loss hereunder shall not be brought prior to the expiration of six days after such proof of loss is filed with the Underwriter nor after the expiration of twenty-four months from the discovery of such loss, except that any action or proceeding to recover hereunder on account of any judgment against the Insured in any suit mentioned in the Clause entitled Court Costs and Attorneys’ Fees, or to recover attorneys’ fees paid in any such suit, shall be begun within twenty-four months from the date upon which the judgment in such suit shall become final. If any limitation embodied -in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.”
More specifically, the motion for summary judgment is based on the following grounds:
“1. Suit was not filed within twenty-four months from the discovery of the loss.
“2. No written notice of the loss was given within six months of the discovery of the loss.
“3. Sugarland failed to give the Underwriter written notice at the earliest practical moment after discovery of the alleged loss.
“4. The loss was occasioned by the non-payment or default of a loan which is expressly excluded from coverage; and
“5. The bank has no loss, having been fully reimbursed.”
The trial judge was of the opinion that there were questions of material fact as to the first four grounds, but granted summary judgment as to the last ground alleged.
The validity of the first three grounds alleged depends upon the time that the loss was discovered, since it is undisputed that no notice or proof of loss was furnished until August 24, 1972. Defendant contends that the loss was “discovered” as early as March 17, 1970, when Sugarland learned that payment was stopped on the draft, and certainly no later than early 1971, when the directors were forced to make up the deficit.
Plaintiff contends that the loss was not “discovered” until they learned that there was fraudulent activity on the part of Diamond. It is contended that this knowledge came to it as a result of conversations with *338 other bankers, newspaper clippings and F. B.I. interviews, and that the bank did not know of the fraud until August, 1972, when it notified Aetna. The affidavit of John H. Dejean, president of Sugarland when the suit was filed, states that the bank did not know of the fraud until November, 1973, which is over a year after the claim was made.
The questions presented are of mixed law and fact, which we feel should be resolved after trial on the merits. Certainly there is a dispute as to the fact of when plaintiff had, or should have had, knowledge of the alleged fraud, which is one factor to be considered in making the decision herein.
The fourth ground alleged is based on the fact that, upon learning that payment had been stopped on the draft, Sugarland set up the debit on its books as a loan transaction and attempted to effect collection of the $175,000.00 note. It is argued that the bond does not cover losses from non payment of a loan. However, the affidavits of both Mr. Dejean and Mr. Pro-kop allege that the funds were advanced on the basis of the Bank of Sark draft and that the note was taken only as collateral security. They allege that no loan was ever made to Diamond or its representatives. There is, therefore, a dispute as to a material issue of fact relating to this point.
As stated above, the trial judge maintained the motion for summary judgment on the ground that the bank had recovered its loss from its directors, and therefore had no right to recover under the bond. However, Mr. Dejean’s affidavit states that the payments made by the directors “were in fact loans to the Bank by the directors and are to be repaid out of earnings of the Bank; therefore, a loss definitely has occurred, as alleged in the Petition.” This statement refutes Aetna’s contention that the bank has been made whole, and there is therefore, a dispute as to a material fact.
 In ruling on a motion for summary judgment, we cannot weigh the evidence, nor may we concern ourselves with the probability of the success or failure of the parties. Summary judgment may be rendered only in the absence of dispute as to the material facts, and we have found such disputes to exist as to all grounds urged by the defendant.
The judgment appealed from is therefore reversed, and the case remanded to the trial court for trial on its merits. All costs of this appeal shall be paid by defendant, with the assessment of all other costs to await final determination of the case on its merits.
Reversed and remanded.